## Certificate Of Service

I, the undersigned, do hereby certify that I have placed in the proper officials' hands at the Lanny Gist Unit located at 3295 FM 3514, Beaumont, TX 77705 the enclosed Writ of Mandamus with attachments as evidence to be mailed

To: Clerk of the Texas Criminal Court of Appeals
Clerk Abel Acosta
P.O. Box 12308
Capitol Station
Austin, TX 78711-2308
(1) original

that is mailed on 16th day of December , 2015.

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 21 2015

Abel Acosta, Clerk

This document contains some pages that are of poor quality at the time of imaging.

/S/ _____
Renzy Stowe
# 1926843
Lanny Gist Unit
3295 FM 3514
Beaumont, TX 77705

## Card 1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery  9/4/15

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Clerk of the 179th
District Court
1201 Franklin Street
Houston, TX 77002

9590 9403 0372 5163 6250 92

2. Article Number (Transfer from service label)

7014 1820 0001 0385 0743

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053   Domestic Return Receipt

## Card 2

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Office of the Chief
Disciplinary Counsel
P.O. Box 13287
Austin, TX 78711

9590 9403 0372 5163 6250 85

2. Article Number (Transfer from service label)

7014 1820 0001 0385 0736

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053   Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Little Stone
5407 ½ Tommye
Houston, TK 77028

USPS TRACKING#

9590 9403 0372 5163 6250 92

UNITED STATES POSTAL SERVICE

TX 787
08 SEP 15
PN 4 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Little Stone
5407 ½ Tommye
Houston, TK 77028

USPS TRACKING#

9590 9403 0372 5163 6250 85

Littie Stone
5407 ½ Tommye
Houston, TX 77028

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

7014 1820 0001 0385 0736

U.S. POSTAGE
PAID
HOUSTON, TX
77013
SEP 03, 15
AMOUNT
$10.39
1000      78711      R2304M115544-03

RECEIVED

SEP 08 2015

Chief Disciplinary Counsel
State Bar of Texas

<u>Office of the Chief Disciplinary</u>
<u>Counsel</u>
<u>P. O. Box 13287</u>
<u>Austin, TX 78711</u>

Renzy Stowe,

VS.

State of Texas,

## Petition For Writ Of Mandamus

Comes Now the petitioner, Renzy Stowe, pro-se and proper person files this Petition For Writ of Mandamus pursuant to Code of Criminal Procedure 4.04. In support thereof petitioner states as follows:

1. Petition filed a successful Writ of Habeas Corpus pursuant to C.C.P. 11.07.

2. Petitioner filed a certified mail to the 179th District Court of Harris County on _____, to make sure that the clerk of court received his 11.07 petition.

3. Petitioner states pursuant to 11.07, Section 3(b), the State of Texas did not answer within a (20) twenty day period.

4. Petitioner states pursuant to 11.07, Section 3(c), the 179th District Court did not resolve the fact brought by petitioner in his 11.07.

5. Pursuant to 11.07 Section 3(c) provides, "Failure of the Court to act within the allowed 20 days shall constitute such a finding."

6. Petitioner claims that he has not received any notification from the 179th District Court that any judgment has been rendered and/or refiled to the Texas Criminal Court of Appeals to this date and time.

Prayer

Petitioner prays that this Court would grant his Petition For Writ of Mandamus is Granted and order the 179th District Court of Harris County to Grant Petitioner's Bench Warrant Petition for further proceedings in the case at bar.

Respectfully Submitted

/s/ _____

Kenzy Stone
# 19 26 843
Larry Gist Unit
3295 FM 3514
Beaumont, TX 77705

CAUSE NO. 1397660

Renzy Stone,

VS.

State of Texas.

In The 179ᵗʰ District Court
Harris County, Texas.

## Motion For Bench Warrant

Now Comes Renzy Stone, pro-se and in his proper person files this Motion For Bench Warrant. In support thereof the petitioner states as follows:

"My name is Renzy Stone, petitioner and my offender number is 1926843 _____, I am competent to make this affidavit, I am presently INCARCERATED in the Larry Gist Unit located at 3295 FM 3514, Beaumont, TX 77705. I request the court to issue a Warrant from the Bench ordering the Sheriff of Jefferson County, to transport me to the 179ᵗʰ District Court in Harris County, in the city of Houston, for hearing in this matter so that I may give testimony.

Prayer

Petitioner respectfully prays that this Court grant this motion and order the Sheriff of Jefferson County to transport petitioner to the hearing of this cause.

Respectfully Submitted

/s/ _____

Petitioner, Pro-Se
Renzy Stone
#1926843
Larry Gist Unit
3295 FM 3514
Beaumont, TX 77705

Henry Stone,

Vs,

State of Texas,

Cause No. 1397600

In The 179th District Court
Harris County, Texas

<u>Order</u>

On this the ____ day of _____ 20___, came on to be heard the Petitioner's Request For Bench Warrant and after due consideration of the same it is, ORDERED that the Petitioner's Request for a hearing is (Granted/Denied); and that said cause is set for hearing on the day of _____, 20___; and it is further;

ORDERED that the Petitioner's Request for bench warrant is (Granted/Denied); and the Clerk of the Court is to notify said Petitioner Regarding the Bench Warrant of the Petitioner to this County for said Trial.

_____
Judge Presiding

In The District Court Of Texas
For The County of Harris

Renzy Stone,
Petitioner
VS.

State of Texas
Respondent,

Cause No. 1397660
(To Be Supplied And Filed By Clerk)

Memorandum Of Law
In Support of
Petitioner's Petition For Habeas Corpus Relief Under 11.07

Comes Now the petitioner, Renzy Stone, pro-se and on his proper person files this Memorandum Of Law In Support Of Petitioner's Petition For Habeas Corpus Relief Under 11.07. In Support Thereof Petitioner States As Follows:

1. The seizure of Renzy Stone's Blood is A Violation of his 4th Amendment Rights.

2. Ben Taub hospital did not obtain a consent from the Petitioner nor search warrant by a judge to obtain his blood.

3. By evidence being obtained illegally, the charge of intoxicating manslaughter should be dismissed.

4. Petitioner's trial attorney was ineffective for not investigating the case along with several other constitutional factors.

(1)

# I. Evidence Obtained By Hospital Staff Was Illegally Seized

Pursuant to the intoxicating manslaughter statute. 49.08 provides:

(a) A person commits an offense if the person:

(1) operates a motor vehicle in a public place, operates an aircraft, a watercraft, or an amusement ride, or assembles a mobile amusement ride; and

(2) is intoxicated and by reason of that intoxication causes death of another by accident or mistake.

(b) Except as provided by Section 49.09 an offense under this section is a felony of the 2nd degree.

For purposes of determining offense of intoxication manslaughter; it is not enough that operation of a vehicle, even by an intoxicated person, causes the death; rather, the death must be the result of the intoxication, and [proof] must be made of that thing which worked a casual connection between the intoxication and the death. Garcia v. State, (App. 14th Dist. 2003) 112 S.W.3d. 839 Because intoxication manslaughter includes all the elements of driving while intoxicated (DWI), intoxication manslaughter includes proof required to establish the offense of driving while intoxicated; thus, the misdemeanor offense of intoxicating manslaughter. Henry v. State, (App. 1st Dist. 2007) 263 S.W. 3d. 151.

Incorporating the criminal statute of Intoxicating Manslaughter with Garcia and Henry, the petitioner should have been charged with misdemeanor DWI, in thus, the following illustrates the illegal seizure of his blood at Ben Taub hospital.

## II. Ben Taub Hospital Obtained The Petitioner's Blood Illegally Without Consent And Without A Search Warrant From A Judge

This issue was clarified in the opinion provided in TIJERINA V. State, 334 S.W. 3d. 825, 832 - 836 (Tex App. - Amarillo 2011) "As a preliminary matter raised by appellant, we address the issues concerning the application of the Fourth Amendment in light of the fact that it was Rogers, a private citizen, who performed the conduct at issue. The Fourth Amendment protects the "Right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. For purposes of the Fourth Amendment, a "search" occurs when the government violates a subjective expectation of privacy that society considers objectively Reasonable. See Kyllo v. United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 150 L. Ed. 2d. 94 (2001).

The government may not encourage conduct by private persons that the government itself cannot do, and if the government encourages a search, or the private citizen searches solely for the purpose of aiding in law enforcement, the search is illegal. See Coolidge v. New Hampshire, 403 U.S. 443, 487-88, 91 S.Ct. 2022, 29 L.Ed. 2d. 564 (1971). To determine whether a person is acting as an instrument or agent of the government, we determine (1) whether the government knew of, and acquiesced in, the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or, instead, to further his own ends. Dawson v. State, 106 S.W.3d. 388 392 (Tex. App. - Houston [1st Dist.] 2003, no pet.).

From the record, it would appear that Rogers was acting as an instrument of the State, and the State makes no contention to the contrary...

Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. Kothe v. State, 152 S.W. 3d. 54, 59 (Tex. Crim. App. 2004). Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally

had a reasonable expectation of privacy that the government invaded. Id. (citing Rakas v. Illinois, 439 U.S. 128, 139, 99 S. Ct. 421, 58 L.Ed. 2d 387 (1978)). A defendant must prove that he or she was a "victim" of the unlawful search or seizure and has no standing to complain about the invasion of someone else's personal rights. Id. Only after a defendant has established standing to complain may a court consider whether he or she has suffered a substantive Fourth Amendment violation. Id. Although we defer to the trial court's factual findings and view them in the light most favorable to the ruling, we review de novo the legal issue of standing... Id.

If evidence is obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States, it is not admissible. Tex. Code Crim. Proc. Ann. Art. 38.23(a)

We review the harm resulting from a trial court's erroneous denial of a motion to suppress and subsequent admission of evidence obtained in violation of the Fourth Amendment under the constitutional standard of Texas Rule of Appellate Procedure 44.2(a). See Hernandez v. State, 60 S.W. 3d. 106, 108 (Tex. Crim. App. 2001). Under Rule 44.2(a)

(5)

, we evaluate the entire record in a neutral, impartial, and evenhanded manner, not in the light most favorable to the prosecution. Harris v. State, 790 S. W. 2d. 568, 586 (Tex. Crim. App. 1989). We must reverse a judgment of conviction and remand for a new trial unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R. App. P. 44.2(a); Hernandez, 60 S. W. 3d. at 108. Constitutional error may, however, be held harmless if there is "overwhelming" untainted evidence to support the conviction. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed. 2d. 284 (1969). In our analysis, we must consider the source and nature of the error and its probable collateral implications, as well as whether declaring it harmless would be likely to encourage the State to repeat it with impunity. Harris, 790 S. W. 2d. at 587. We do not focus on the propriety of the outcome, but calculate, to the degree possible, the probable impact of the error on the conviction in light of the existence of other evidence. See Westbrook v. State, 29 S.W. 3d. 103, 119 (Tex. Crim. App. 2000). We are called to examine the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at its verdict, that is, whether the error adversely affected

(6)

"the integrity of the process leading to the conviction." Scott v. State, 227 S.W.3d. 670, 690 (Tex. Crim. App. 2007) (citing Harris, 790 S.W.2d. at 587). Our primary concern is whether there is a "reasonable possibility" that the error might have contributed to the conviction. Mosley v. State, 983 S.W.2d. 249, 259 (Tex. Crim. App. 1998).

Now the Petitioner shall illustrate why the evidence against him is in violation of the Fourth Amendment to the United States Constitution.

The Petitioner was admitted to Ben Taub Hospital at 7:18 p.m. on 6/28/2013, (Exhibit One) and upon being admitted it was noted that the petitioner was confused and the on staff doctors were concerned his actions were due to his medical condition from the motor vehicle accident. (Exhibit Two).

Dr. Theresa Harring, M.D. reported at 7:51 p.m. on June 28, 2013, that, "Patient altered, reportedly on P.C.P. Sitting up, Refusing exam. After Ativan and Versed, coaxed into allowing exam. Repetitive questioning." (Exhibit Three) (Emp. Added)

First, how did this doctor make the assessment that the petitioner was on p.c.p. when there were no tests performed until 6/29/13 at 2:34 A.M. (See Exhibit Five). It was also noted that the petitioner had no alcohol in his system, in thus, there was no reason for him to be under arrest. The test for alcohol was performed at 7:53 p.m. on 6/28/13 and was taken by IV Blood extract by needle.

What is really interesting is that the petitioner was "Chemically sedated" on 6/28/13 at 9:23 p.m. (Exhibit Four) and later on, early in the morning, Doctor Theresa Harring, M.D., ordered a drug screen test by urine at 2:34 A.M. on 6/29/13. By the petitioner being sedated and confused, an illegal seizure was performed, [more than likely he was coaxed into giving urine just as admitted earlier, being coaxed into allowing a blood test. (See Exhibit Three).

(8)

Exhibit Five illustrates petitioner had a blood test at 7:53 p.m. on 6/28/13. If allegedly there were drugs found in the blood of petitioner, then why was a drug screen ordered by Dr. Theresa Haarring at 2:34 a.m. on 6/29/13. By law the definition of intoxicating manslaughter means the driver must be intoxicated under alcohol. (See page two of memorandum of law). If evidence is obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States, it is not admissible. (Tex. Code Crim. Proc. Ann. Art. 38.23(a).)

Next, there was no search warrant by a judge in Harris County to "seize" petitioner's blood and/or urine to be tested for alcohol/drug content and the petitioner did not sign any consent forms on the date of 6/28/2013 or 6/29/2013.

(9)

The Supreme Court of the United States has held that obtaining a blood sample from an accused falls within the Fourth Amendment's protection of persons against unreasonable searches and seizures. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Texas constitutional protection against unreasonable search and seizures has been held to be at least as extensive as the Fourth Amendment. See and compare Bower v. State, 769 S.W.2d. 887 (T.C.A. 1989), cert. denied, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); Brown v. State, 657 S.W.2d. 797 (T.C.A. 1983) Heitman v. State, 815 S.W.2d. 681 (T.C.A. 1991). We have specifically held that under Article 1, Sec. 9, of the Texas Constitution "the taking of a blood sample is a search and seizure." Ferguson v. State, 573 S.W.2d. 516 (T.C.A. 1978); cert. denied 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979), Reh. denied, 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 124 (1979); Aliff v. State, 627 S.W.2d. 166 (T.C.A. 1982). The U.S. and Texas Constitutional protections against unreasonable search and seizure apply only when the government conducts the search and/or seizure. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); U.S. v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d. 85 (1984); Vargas v. State, 542 S.W. 2d. 151 (T.C.A. 1976) cert. denied, 429 U.S. 1109, 97 S.Ct. 1140 51 L.Ed.2d. 562 (1977),

"However, [A]lthough the Fourth Amendment does not apply to a search and seizure, even an arbitrary one, effected by a private party on his [or her] own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the government." Skinner v. Railway Labor Exec. Ass., 489 U.S. 602, 109 S. Ct. 1402, 103 L.Ed.2d, 639(1989). To determine whether a private party acted as an instrument or agent of the government, the Supreme Court has advocated using the test of whether "in light of all the circumstances, the private citizen must be regarded as acting as an instrument or agent of the state." Coolidge v. New Hampshire, 403 U.S. 443, 448, 91 S. Ct. 2022, 2049, 29 L.Ed.2d, 564(1971). The U.S. Court of Appeals for the Ninth and Sixth Circuits look to whether the private actor had a legitimate independent motivation for taking the action which is challenged. See U.S. v. Walter, 652 F. 2d. 788, 792(9ᵗ Cir 1981); U.S. v. Howard, 752 F. 2d. 220, 227. (6ᵗ Cir) cert. denied, (citations omitted)

The above reasoning is parallel to the case at bar. Doctor Theresa Harring went outside her authority acting as an agent for the state, to withdraw petitioner's blood and urine without his consent and search warrant.

(11)

This same doctor made a verbal/written statement stating petitioner was under P.C.P., but it is noted for the record that he was not under the influence of alcohol. (See Exhibit Six). Now since the petitioner was not under influence of alcohol, then why was he under arrest. His blood was drawn at 7:53 p.m. on 6/28/13, then drug tested at 2:34 a.m. on 6/29/13. Something is wrong with this picture.

Petitioner alleges that the police had no right to take his blood from Doctor Theresa Hanning, and the U.S. Supreme Court have found that the conduct of the police in obtaining the blood sample from the nurse/doctor constituted state action. Cf. Walter v. U.S., 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed. 2d. 410 (1980). To determine if the accused has made a showing of a legitimate right of privacy, courts may look to the totality of the circumstances. See Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed. 2d. 633 (1980); Bower v. State, 769 S.W. 2d. 887 (Tex. Crim. App. 1989).

This would explain two antagonizing factors: (1) just to cover their illegal actions, they had the petitioner sign a consent form on the date of his discharge of 6/30/13; and (2) the Ben Taub Hospital tried to deter the petitioner's mother, Little Stone, by unnecessarily copying pages duplicative times for a total of 241 pages, but the consent form was left out. Mrs. Stone had to travel back to Ben Taub and literally threaten hospital staff for the consent form, in which, the Records office finally released to her. The original Records were released on July 8, 2015 at 3:50 p.m., but the consent form, which was not in Record, was pulled from an e-file on July 27, 2015; which shows the petitioner's signature two days after admittance when he was discharging.

Also for the record, petitioner was severly confused when admitted (Exhibit Two) and that his behavior was caused by his medical condition (Exhibit Two). Petitioner was then drugged and coerced into allowing physical exam without a signed consent (Exhibit Three).

(B)

Petitioner was chemically sedated at 9:23 p.m. on 6/28/13 (Exhibit Four) and tested for drugs under sedation after no alcohol was found in his blood. (Exhibit Five).

Controlled Substances were found in his blood and the petitioner still exhibited confusion (Exhibit Six). Ben Traub Hospital kept petitioner under chemical sedation under Morphine and Hydrocodone (Exhibit Seven). Hospital also gave petitioner Tramadol, Benadryl (diphenhydramine) and Haldol (haloperidol) which all are mind altering drugs (Exhibit Eight) Finally, petitioner asked for his attorney, but none was given (Exhibit Eight) [Note by R.N. Shani Shaji].

Upon discharge, petitioner had signed a "Consents, Agreements, Authorizations, Acknowlegements, and Irrevocable Assignments" Form on June 30, 2013 and witnessed by Deyanira Zepeda. (See Exhibit Nine).

(14.)

According to Black's Law Dictionary, Tenth Edition publish in 2014, on page 958, the "irrevocable" definition means Unalterable; committed beyond recall. (adj).

Incorporating the above meaning with the argument presented, this is the only document signed by the petitioner giving consent to take and/or draw blood for drug test. This clearly illustrates the illegal "seizure" of the petitioner's urine and blood. Harmless error analysis is unnecessary for Brady Claims and ineffective assistance of counsel claims, since such claims utilize the more demanding Reasonable probability standard. Barrientes v. Johnson, 221 F.3d. 741, cert. dismissed, 121 S. Ct. 902, 531 U.S. 1134, 148 L.Ed. 2d 948 (5ᵗʰ Cir. 2000).

This argument shall be argued in the next section which gives affirmative links to the entire constitutional violations argued in violation of Brady and Fourth Amendment Claims.

## III. Petitioner's Trial Attorney Was Ineffective By Not Filing for Discovery Under Brady, Not Filing A Speedy Trial Motion And Failed To File A Motion To Dismiss Charges

As illustrated in Sections I and II, Petitioner's Constitutional Rights were violated. This is one of the primary Reasons why the petitioner Submitted Exhibits One through Nine to Show the Court how his case violated his constitutional Rights. The petitioner submits with his 11.07 petition the Brady Motion Request since none were filed and is timely through any stage of pre or post conviction stage. Rose v. Johnson, 141 F. Supp. 2d. 661 (S.D. Tex 2001).

When an defendant asserts his trial counsel was ineffective, he must prove (1) his trial counsel's representation was deficient; and (2) his trial counsel's deficient performance was so serious that it prejudiced his defense. Strickland v. Washington 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d. 674 (1984); Bone v. State, 77 S.W. 3d. 828, 833 (Tex. Crim. App 2002). Petitioner's counsel never examined the evidence of illegal seizure of his blood and urine. This counsel was just "milking the system" by having the case continued for a period of one year; this violates the speedy trial clause of the Sixth Amendment. Common knowledge of the Court can conclude that (1) petitioner's Rights to Brady Claims are factual, (2) petitioner's Rights to Speedy Trial Claims are true; (3) Counsel was ineffective by not filing pre-trial motions; and (4) Counsel was ineffective for coercing Petitioner to plea guilty.

(17)

Indeed, defendant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. Id. To accomplish this, defendant must identify the specific "acts or omissions of counsel that are alleged" to constitute ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. McFarland v. State, 928 S.W.2d. 482, 500 (Tex. Crim. App. 1996) (citing Strickland, 466 U.S. at 690, 104 S. Ct. at 2065-66). An assertion of ineffective counsel will be sustained only if the record affirmatively supports such a claim. See Ex parte Ewing 570, S.W.2d. 941, 943 (Tex. Crim. App. 1978).

(18)

Without a record to explain trial counsel's Rationale, there is a "strong presumption that counsel was competent." Perez v. State, 56 S.W. 3d. 727, 730-31 (Tex. App. Houston [14th Dist] 2001, pet. Ref'd); see also Thompson v. State, 9 S.W. 3d. 808, 813 (Tex. Crim. App. 1999). Indeed, to defeat the presumption of Reasonable professional assistance, "[A]ny allegation of ineffectiveness must be firmly founded in the Record, and the Record must affirmatively demonstrate the alleged ineffectiveness." McFarland, 928 S.W. 2d. at 500.

As provided earlier in Section II., petitioner has shown his "Allegation of ineffectiveness" which is firmly founded in the Record."

Finally the Prosecution's Office is at fault for Violating Brady Discovery Claims of withholding evidence which was aided by petitioner's counsel. This will be explained in the next section,

(19)

## IV. Prosecution Withheld Exculpatory Evidence Which Was Added By Petitioner's Trial Counsel

Evidence submitted by petitioner, (Exhibits One thru Nine) illustrate a clear violation of the Fourth Amendment. What is really interesting is that Exhibit Nine shows the petitioner signed consent for drug testing when he was drug tested on 6/28/13 and 6/29/13. Ben Taub Hospital also tried to discourage the petitioner by repeatedly copying the same pages over and over; and did not include the consent form until the petitioner's mother, Littie Stone, literally had to threaten the Records office. The form clearly states "All records" on the form signed by the petitioner, Renzy Stone. This would explain why trial counsel did not (1) file a motion to supress; (2) file a motion for speedy trial; and (3) failed to investigate the case at bar. This alone illustrates a conflict of interest.

(20)

In Stock v. State, 214 S.W. 3d. 761, 766 (Tex. App. Austin 2007) provided, "A defendant's assertion in the trial court of his right to speedy trial" is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Baker v. Wingo, 407 U.S. at 531-532, 92 S.Ct. 2182. "Failure to assert that right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 532, 92 S.Ct. 2182. A defendant's request for a dismissal rather than a prompt trial setting "may attenuate the strength of his claim." (Tex. App. – San Antonio 1998, no pet.). Nonetheless, a defendant has no duty to bring himself to trial." Id. Tex. Const. art 1, §10; Tex Code of Crim. Proc. Art. 1.05 (West 2005). Also, the Austin Court in Stock, has articulated – The length of the delay is measured from the time the defendant is arrested or formally accused. Harris v. State, 827 S.W.2d. 949, 956 (Tex. Crim. App. 1992) (citing U.S. v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed. 2d. 468 (1971)). Generally, any delay over one year has been held sufficient to trigger the speedy trial inquiry. Shaw v. State, 117 S.W. 3d. at 889.

This is what happened to the petitioner for it took one year for him to receive a ten year guilty plea. A related issue is the reason the government offers to justify the delay. ZAMORANO V. State, 84 S.W. 3d. at 649. Courts assign different weights to different reasons. Id. For example, a deliberate attempt to delay the trial in order to hamper the defense will weigh heavily against the State, while a "more neutral reason such as negligence or over crowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. quoting Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. 2182).

The right to a speedy trial is designed to protect three discernible interests: (1) prevention of oppressive pretrail incarceration, (2) minimization of the accused's anxiety and concern, and (3) limitation of the possibility that the accused's defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. 2182. A showing of actual prejudice to these interests is not required. Rangel, 980 S.W. 2d. at 844. Rather the defendant need only make "some showing" that he has been prejudiced by the delay. Id.

(22)

The prejudiced by the prosecuting Attorney and defense counsel is that they (1) withheld evidence (2) denied speedy trial, (3) denied petitioner his rights to confront the evidence and (4) Refused to allow petitioner to exercise his rights to challenge through motion to supress evidence. This alone would warrant a dismissal.

Ordinarily, a conviction is not overturned unless the trial court makes a mistake. (In appellate parlance, trial court mistakes are Referred to as "errors," Hawkins v. State, 135 S.W. 3d. 72, 76 (T.C.A. 2004)) which may be Reversible, depending on the applicable harm analysis (if any). Id.; see Tex. R. App. P. 44.2; Almanza v. State, 686 S.W. 2d. 157 (Tex. Crim. App. 1985). There are just a few situations in which a conviction can be overturned even though the trial court has done nothing wrong. Misconduct by the prosecutor, alone, can be grounds for such an occurrence if perjured testimony is knowingly used, U.S. v. Bagley, 473 U.S. 667, 679, 105 S Ct. 3375, 87 L.Ed. 2d. 481. (1985); Ex parte Fierro, 934 S.W. 2d 370 (Tex. Crim App. 1996), exculpatory evidence is supressed, Bagley,

(23)

473 U.S. at 674-678, 105 S.Ct. 3375, Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed. 2d. 215 (1963) or the prosecutor has a conflict of interest requiring recusal. State ex rel Edison v. Edwards, 793 S.W. 2d. 1, 6 (T.C.A. 1990). Defense counsel can provoke such an occurrence by being unqualified, Canto v. State, 930 S.W.2d. 594 (T.C.A. 1996), having a conflict of interest, Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), failing to act on behalf of the defendant in any meaningful way, U.S. v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed. 2d 657 (1984) ("if counsel entirely fails to subject the prosecution's case to be meaningful adversarial testing."), or by committing errors that prejudice the defendant, Strickland, Supra.

These limited situations all share a common element: ordinarily, neither the trial court nor the defendant has any control over the events. The use of perjured testimony and the suppression of exculpatory evidence cannot always be corrected by the trial court or objected to by the

(24)

defendant because, often neither is in a position to know about the wrongdoing at the time it occurs. A prosecutor's refusal to recuse himself from the case cannot be corrected because the trial court has no authority to force a recusal. _Edwards_, 793 S.W. 2d. at 6. And a deficiency in defense counsel qualifications or representation ordinarily cannot be corrected by the trial court or the defendant because defense counsel is the very person charged with safeguarding the defendant's interest.

However, if the misconduct in question does not amount to the complete denial of counsel, then some standard of harm, variously phrased as "prejudice" or "materiality" is required to establish a constitutional violation leading to reversal of the conviction. And suppression of exculpatory evidence and ineffective assistance of counsel claims are governed by the _Strickland_ standard and whether "there is a reasonable probability that... the result of the proceeding would have been different, _Bagley_, 473 U.S. at 682, 105 S.Ct. 3375.

In the case at bar, the proceedings would have been different if evidence was submitted by the prosecution and if evidence was discovered by trial counsel for the petitioner, he would have not plead guilty and would have insisted on going to trial for acquittal.

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct 1029, 145 L.Ed. 2d 985 (2000), the defendant contended that counsel failed to consult with him about filing an appeal. 528 U.S. at 484, 120 S.Ct. 1029. The Court held that, to show prejudice, a defendant in **this** situation must demonstrate "A Reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. In both cases the defendant was Required to show A Reasonable outcome Id at 483, 120 S.Ct. 1029. So in the involuntary plea context, the defendant need not show that his case would have received a more favorable disposition had he gone to trial, Id. Johnson v. State, 169 S.W.3d. at 229-231,

(26)

The Brady Claim against the prosecution is a direct error on behalf of the prosecutor's office. None of the evidence enclosed within this Petition For Habeas Corpus Relief, was ever presented. It is not known to the petitioner if his counsel filed for a Brady Discovery Motion or not. All he knows is that he was in jail for approximately one year when the trial court's appointed counsel gave him a "one-day deal" of (10) ten years. Evidence had to be turned over to the prosecution in order to indict the petitioner on his charge. By prosecution not allowing the petitioner to examine any evidence by contesting the merits violates due process. There is no way the prosecution for the State of Texas can manouver away from the responsibility of handing over exculpatory evidence to defense counsel.

(27)

The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a prosecutor fails to disclose evidence favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding. Thomas v. State, 841 S.W.2d. 399, 404 (Tex. Crim. App. 1992).[1] In order to establish a due process violation under Brady, a defendant must show: 1) evidence was supressed; 2) the supressed evidence was favorable to the defense; and 3) the supressed evidence was material to either guilt or punishment. United States v. Runyan, 290 F.3d. 223, 245 (5th Cir. 2002); Thomas, 841 S.W.2d. at 404; Buckley v. State, 46 S.W.3d. 333, 339 (Tex. App. - Texarkana, 2001, pet. dism'd, untimely filed). Favorable evidence includes both exculpatory and impeachment evidence. Thomas, 841 S.W.2d. at 404. The supressed evidence is therefore within this petition and is favorable to the petitioner.

---

[1] The Thomas case presents an analysis of the applicable case law, Bagley, supra. U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady, supra. Material evidence favorable to the defense, which the prosecutor is required under this Rule of Law to disclose is referred to as "Brady Material."

## Summary of Facts

Overall, the petitioner suffered a violation of his Fourth, Sixth and Fourteenth Amendment Rights by:

1) Illegal seizure of petitioner's blood and urine without his consent and/or search warrant ordered by a judge;

2) The cross-examine clause of the Sixth Amendment for failure of the evidence to be viewed and disputed by the defense;

3) Ineffective Assistance of Counsel on conflict of interest claims and failure to file discovery motions;

4) Ineffective Assistance of Counsel for Counsel failing to file a Motion To Suppress, Motion For Speedy Trial and Motion For Dismissal;

5) Due Process Violation for Prosecution failing to turn over exculpatory evidence to defense.

Once the evidence is suppressed for violation of the Fourth Amendment, there will be no evidence to hold petitioner incarcerated which makes this a successful Writ of Habeas Corpus.

(29)

The United States Supreme Court in U.S. v. Morrison, 449 U.S. 361, 101 S. Ct. 665 (1981), discussed circumstances under which dismissal of a charging instrument might be appropriate remedy for violations of a defendant's Sixth Amendment right to counsel. When confronted with a Sixth Amendment violation, a trial court must, "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant Assistance of counsel and a fair trial." Morrison, 449 U.S. at 365, 101 S. Ct. at 668, 66 L. Ed. 2d at 568. The Supreme Court stated that supressing evidence and limiting cross-examination are the preferred methods for neutralizing the effects of right to counsel violations. However, the Supreme Court opinioned that dismissal may be warranted where a defendant suffers demostratable Prejudice, or a substantial threat thereof and where the trial court is unable to "identify and neutralize the taint" by other means. Id.

(30)

Finally in *Exparte Valerie Sue Perales*, 215 S.W. 3d. 418 (2007), Defendant applied for a writ of habeas corpus when she pleaded guilty to delivery of a controlled substance to a child. The 251st District County Potter County, Abel Lopez J., entered an order Recommending relief.

The Court of Criminal Appeals, Johnson, J., held that the record supported habeas court's determination that no evidence supported conviction,

The *Perales* Court held: "It is well settled that a challenge to the sufficiency of the evidence is not cognizable on an application for a post-conviction writ of habeas corpus. *Exparte Grigsby*, 137 S.W.3d. 673, 674 (Tex. Crim. App. 2004). However, a claim of no evidence is cognizable because "[w]here there has been no evidence upon which to base a conviction, a violation of due process has occurred and the conviction may be attacked collaterally

(31)

in a habeas corpus proceeding." Ex parte Coleman, 599 S.W.2d. 305, 307 (Tex. Crim. App. 1978). If the Record is devoid of evidentiary support for a conviction, an evidentiary challenge is cognizable on a writ of habeas corpus. See Ex parte Brown, 757 S.W.2d. 367, 368-69 (Tex. Crim. App. 1988); Ex parte Williams, 703 S.W.2d. 674, 679-80 (Tex. Crim. App. 1986). Id. Perales 245 S.W.3d at 419-20.

The above reasoning is parallel to the case at bar. Since the evidence was illegally obtained, there will be no evidence against the petitioner.

Wherefore, the petitioner prays that his Petition For Habeas Corpus Relief is granted.

/s/ _____

Renzy Stowe
Petitioner

provider:        1936
Performed:        06/28/13 2013 - 06/28/13 2037        Resulting Lab:  SMS
Specimen Information

| Type | Source | Collected On 06/28/13 2038 |
|---|---|---|

Comment: With IV contrast, without PO.To call results: BT:32658 or 32675; LBJ:65620. No LMP for male patient.

**CT PELVIS W CONTRAST [146288568]**        Resulted:  0000, Result Status: In process

Ordering provider:        Harring, Theresa R, MD  06/28/13  1936        Resulted by:    Horn, Gary L Jr., Resident (MD
Performed:        06/28/13 2013 - 06/28/13 2037        Resulting Lab:  SMS
Specimen Information

| Type | Source | Collected On 06/28/13 2038 |
|---|---|---|

Comment: With IV contrast, without PO.To call results: BT:32658 or 32675; LBJ:65620. No LMP for male patient.

**CT CHEST W CONTRAST [146291798]**        Resulted.  0000, Result Status: In process

Ordering provider:        Harring, Theresa R, MD  06/28/13  2131        Resulted by:    Kuban, Joshua, Resident
Performed:        06/28/13 2209 - 06/28/13 2224        Resulting Lab:  SMS
Specimen Information

| Type | Source | Collected On 06/28/13 2225 |
|---|---|---|

Comment: No LMP for male patient.

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **6 - SMS** | SMS | Unknown | Unknown | 04/28/04 0000 - Present |
| **105 - MISYS** | MISYS | Unknown | Unknown | 04/28/04 0000 - Present |
| **505 - BM1** | BT MAIN-STATION 1 | Unknown | Unknown | 10/09/04 0000 - Present |
| **507 - BM3** | BT MAIN-STATION 3 | Unknown | Unknown | 10/09/04 0000 - Present |
| **508 - BM4** | BT MAIN-STATION 4 | Unknown | Unknown | 10/09/04 0000 - Present |

## Custom History

**Progress Notes**

Shaji, Shani, RN at 6/30/2013  4:47 PM

Author Type: Registered Nurse        Status: Signed

AVS, and prescription  given to the officer Kunkel, C with the patient.  Patient verbalized understanding of all the information given. IV removed, no complications. Patient going to jail with officer Kunkel, C. Patient alert, oriented, in no apparent distress, denied any pain. Patient taken downstairs on wheel chair.

Xue, Amy S, Resident at 6/29/2013  9:27 PM

Author Type: Resident        Status: Signed

**Tertiary Trauma Survey**

Renzy Stone is a 31y.o. male Hospitalized 6/28/2013  7:18 PM.        ← *Admitted*

**Mechanism of Trauma**

MVC

No murmur heard.
Pulmonary/Chest: Effort normal and breath sounds normal. No respiratory distress. He has no wheezes. He has no rales.
Abdominal: Soft. He exhibits no distension. No tenderness. He has no rebound and no guarding.
Musculoskeletal: Normal range of motion. He exhibits no edema and no tenderness.



Arms: 1: Superficial abrasion
Neurological: He is alert.
Skin: Skin is warm and dry. No rash noted. He is not diaphoretic. No erythema. No pallor.

## Procedures

Procedures

## ED Course

MDM

31 yo M BIB EMS after MVA, with AMS, combative.

- Trauma surgery at bedside
- CXR
- tdap
- chemical restraints
- CT H/CS
- CT A/P

Staff present during evaluation.

Theresa Harring, M.D.
Emergency Medicine, R2
Provider ID: 36445
1951

## NON-VIOLENT RESTRAINTS PROVIDER NOTE

The patient Renzy Stone is severely agitated and confused. Verbal de-escalation and redirection were unsuccessful and it is my medical opinion that less restrictive interventions are/were ineffective. I am concerned that the patient's behavior is caused by a medical condition, that he might pull out tubes, lines or dressings, is interfering with the provisions of care and is attempting to ambulate or get out of bed without assistance when assistance is required for safety and that

*Exhibit Three*

his behavior jeopardizes his immediate physical safety. The patient will be placed in restraints in order to keep him safe and in order to facilitate further medical evaluation and care.

Theresa R Harring, MD
June 28, 2013 7:51 PM


CT A/P shows an inferior sternal fracture. Will proceed with CT chest. Discussed this with the Radiology resident and despite risks of double dye load, risk of possible injury outweighs risk of not finding possible other injuries. Will give 2L NS now for hydration and proceed with CT chest, trop, and EKG.

Discussed with Dr. Morris of GS - will await CT chest for final disposition.

Theresa Harring, M.D.
Emergency Medicine, R2
Provider ID: 36445
2157

**TEACHING PHYSICIAN NOTE**

I personally examined Renzy Stone, performed the key portions of the history and physical examination and was directly involved in his care.
Trauma Code 1 patient. I was present on arrival of the patient and began my assessment at that moment.

*Chemically Sedated*

I reviewed the laboratory results, radiology results, radiology images and resident's note and agree with the findings as documented in the resident's note..
Patient altered, reportedly on pcp. Sitting up, refusing exam. After ativan and versed, coaxed into allowing exam. Repetitive questioning.
CT head and neck negative, CT abd negative but shows sternal injury. Sent back for CT chest. During this time complaining of chest pain (before even leaving CT abd/pelvis). No respiratory difficulty.

CT chest result pending, but no obvious vascular injury and sternal fracture noted.

Surgery aware, and will likely admit the patient.

I discussed the case with the resident and agree with the diagnosis of:
1. Altered mental status (780.97)
2. MVA (motor vehicle accident) (E819.9Z)
3. Abrasion of left shoulder (912.0AA)
4. Chest pain (786.50F)


and plan:
Surgery team present on arrival.
Evaluation continuing, likely admit.


Gregory E Rumph, MD
June 28, 2013 10:35 PM

*Exhibit Four*

2. Small hematoma overlying the left lateral abdominal wall musculature.


**A/P:**
31yo M s/p MVC, combative with +LOC

1. CXR
2. CT H/C-spine
3. CT A/P given mechanism and unreliable exam secondary to mental status
4. Chemical sedation and restraints as per EC
5. Non-displaced sternal fx-no intervention warranted, pain management


Stephanie Morris, MD
General Surgery PGY2
HCHD# 48388
6/28/2013, 9:23 PM
Pager 713 404 7287


**Teaching Physician Attestation Statement:**

I personally examined Renzy Stone with the resident trauma team Drs Saucedo and Morris. I was present in the shock room upon the patient's arrival.
I agree with the history and all the components of the exam as delineated in the resident's note above. I have personally reviewed the current lab results and radiology results. Will add CT chest to workup given mechanism and chest xray findings. Overnight observation.

I have discussed his case with the resident and agree with the medical decision making and plan documented in the resident's note above.

James Suliburk, MD
HCHD ID # 27163


Electronically signed by Suliburk, James W, MD on 6/28/2013 10:30 PM

**H&P by Morris, Stephanie U, Resident at 6/28/2013 9:23 PM**                    Version 1 of 2

| | | |
|---|---|---|
| Author: Morris, Stephanie U, Resident | Service: BT Surgery Blue | Author Type: Resident |
| Filed: 6/28/2013 9:34 PM | Note Time: 6/28/2013 9:23 PM | Status: Signed |
| Editor: Morris, Stephanie U, Resident (Resident) | | |
| Related Notes: Addendum by Suliburk, James W, MD (Physician) filed at 6/28/2013 10:30 PM | | |

### GENERAL SURGERY
### TRAUMA CODE 1


**HPI:** 31yo M with past medical history as below presents following high-speed MVA. He was the driver and hit a couple of cars in front of him. Per EMS, he was extricated from the vehicle, +LOC, then combative with EMS and in SR. Vehicle was totaled.

**PMH:**
Past Medical History
Diagnosis                                        Date

*Exhibit Five*

| Ordering provider: | Harring, Theresa R, MD  06/28/13 1936 | Resulted by: | Horn, Gary L Jr., Resident (MD |
|---|---|---|---|
| Performed: | 06/28/13 2013 - 06/28/13 2037 | Resulting Lab: | SMS |
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| | | 06/28/13 2038 |

Comment: With IV contrast, without PO.To call results: BT:32658 or 32675; LBJ:65620. No LMP for male patient.

### CT CHEST W CONTRAST                                    Resulted:  0000, Result Status: In process

| Ordering provider: | Harring, Theresa R, MD  06/28/13 2131 | Resulted by: | Kuban, Joshua, Resident |
|---|---|---|---|
| Performed: | 06/28/13 2209 - 06/28/13 2224 | Resulting Lab: | SMS |
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| | | 06/28/13 2225 |

Comment: No LMP for male patient.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 6 - SMS | SMS | Unknown | Unknown | 04/28/04 0000 - Present |

### All RADIOLOGY Results

### BASIC METABOLIC PANEL                                    Resulted: 06/29/13 0336, Result Status: In process

| Ordering provider: | Morris, Stephanie U, Resident  06/29/13 0235 | Resulting Lab: | MISYS |
|---|---|---|---|
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| Blood | | 06/29/13 0336 |

### CBC/DIFF                                    Resulted: 06/29/13 0336, Result Status: In process

| Ordering provider: | Morris, Stephanie U, Resident  06/29/13 0235 | Resulting Lab: | MISYS |
|---|---|---|---|
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| Blood | | 06/29/13 0336 |

### URINE DRUG SCREEN                                    Resulted: 06/29/13 0253, Result Status: In process

| Ordering provider: | Harring, Theresa R, MD  06/28/13 1936 | Resulting Lab | MISYS |
|---|---|---|---|
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| Urine | | 06/29/13 0234 |

*← Second Test*

### TROPONIN I POC                                    Resulted: 06/28/13 2150, Result Status: In process

| Resulting Lab: | MISYS |
|---|---|
| Specimen Information | |

| Type | Source | Collected On |
|---|---|---|
| | | 06/28/13 2135 |

### BMP POC                                    Resulted: 06/28/13 2010, Result Status: In process

| Resulting Lab: | MISYS |
|---|---|
| Specimen Information | |

| Type | Source | Collected On |
|---|---|---|
| | | 06/28/13 2001 |

### HIV-1/HIV-2 DIAGNOSTIC/SYMPTOMATIC                                    Resulted: 06/28/13 2005, Result Status: In process

| Ordering provider: | Harring, Theresa R, MD  06/28/13 1936 | Resulting Lab: | MISYS |
|---|---|---|---|
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| Blood | | 06/28/13 1953 |

### ALCOHOL                                    Resulted: 06/28/13 2005, Result Status: In process

| Ordering provider: | Harring, Theresa R, MD  06/28/13 1936 | Resulting Lab: | MISYS |
|---|---|---|---|
| Specimen Information | | | |

| Type | Source | Collected On |
|---|---|---|
| Blood | | 06/28/13 1953 |

*→ First Test*

### Testing Performed By

*Exhibit Six* (handwritten)

## History of Present Illness

31yo M with h/o hypertension and unclear psychiatric disorder was admitted after high-speed MVA, in which he hit several cars in front of him. (+) loss of consciousness, and was very combative with EMS and in the shock room. He was found to have a non-displaced sternal fracture and was admitted for monitor. He is currently under police custody. UDS (+) benzodiazepine, cannabinoid, opiate and PCP

*No Alcohol* (handwritten)

## Initial GCS

Eye Opening: Spontaneously
Verbal Response: Confused but converses
Motor Response: Obeys simple commands
Total Score: 14 ]

## Past Medical Hx

HTN and unclear psychiatric disorder (on risperdal and depakote)

## Social Hx

H/o drug use

## Pre-Injury Medications

Outpatient prescriptions marked as taking for the 6/28/13 encounter
(Hospital Encounter)

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • buPROPion (WELLBUTRIN XL) 150 mg extended release tablet | Take 150 mg by mouth every morning. Was taking twice daily | | |

## Allergies

Allergies as of 06/28/2013 - Fully Assessed 06/28/2013

| Allergen | Reaction | Noted |
|---|---|---|
| • No known allergies | | 06/06/2011 |

## Review of Symptoms

Headache: no
Neck Pain: no
Visual Changes: no
Change in Hearing: no
Difficulty Speaking or Swallowing: no
Other HEENT: no
Chest Pain: yes - mid-chest, consistent with sternal fracture
Shortness of Breath: no
Other Cardiovascular/Respiratory Complaints: no
Abdominal Pain: no
Nausea/Vomitting: no
Spine or Flank Pain: no
Other GI or GU complaints: no
Female Patient: No LMP for male patient.

*Exhibit Seven*

| | | |
|---|---|---|
| • Platelet | 196 | 150 - 400 (K/uL) |
| • Neutrophil | 69 | 50 - 70 (%) |
| • Lymphocyte | 24 | 20 - 40 (%) |
| • Monocyte | 7 | 2 - 10 (%) |
| • Eosinophil | 0 (*) | 2 - 4 (%) |
| • Basophil | 0 (*) | 2 - 5 (%) |
| • Neutrophil, Abs | 7.9 | (K/uL) |
| • Lymphocyte, Abs | 2.8 | (K/uL) |
| • Monocyte, Abs | 0.8 | (K/uL) |
| • Eosinophil, Abs | 0.04 (*) | 0.05 - 0.40 (K/uL) |
| • Basophil, Abs | 0.0 | (K/uL) |

or BMP:

Results for orders placed during the hospital encounter of 06/28/13 (from the past 24 hour(s))

BASIC METABOLIC PANEL

| Component | Value | Range |
|---|---|---|
| • CO2 | 24 | 21 - 32 (mmol/L) |
| • Chloride | 108 (*) | 98 - 107 (mmol/L) |
| • Potassium | 3.8 | 3.50 - 5.10 (mmol/L) |
| • Sodium | 142 | 136 - 145 (mmol/L) |
| • Glucose | 88 | 70 - 99 (mg/dL) |
| • Urea Nitrogen | 12 | 7 - 18 (mg/dL) |
| • Creatinine | 1.2 | 0.6 - 1.3 (mg/dL) |
| • Anion Gap | 10 | |
| • Calcium | 8.4 (*) | 8.50 - 10.20 (mg/dL) |
| • GFR, Estimated | >60 | (mL/min/1.73 m2) |
| • GFR, Estim, Afr-Am | >60 | (mL/min/1.73 m2) |

## Current Inpatient Medications
## Current facility-administered medications

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Dose |
|---|---|---|---|---|---|---|
| • saline flush 10 mL | 10 mL | Intravenous | as needed | Stephanie U Morris, Resident | | |
| • 0.9 % NaCl infusion | | Intravenous | continuous | Stephanie U Morris, Resident | 100 mL/hr (06/29/13 0307) | |
| • morphine 4 mg/mL injection 4 mg | 4 mg | IV Push | q3h prn | Stephanie U Morris, Resident | | Last Dose: 4 mg at 06/29/13 1158 |
| • HYDROcodone-acetaminophen (NORCO) 5-325 mg tablet 1 tablet | 1 tablet | Oral | q6h prn | Stephanie U Morris, Resident | | Last Dose: 1 tablet at 06/29/13 1321 |
| • ondansetron (ZOFRAN) injection 4 mg | 4 mg | IV Push | q6h prn | Stephanie U Morris, Resident | | |

Exhibit Eight

- LORazepam        1 mg   IV        q6h prn  Amy S Xue,      Last
  (ATIVAN)                 Push               Resident        Dose: 1
  injection 1 mg                                              mg at
                                                              06/29/1
                                                              3 0819

- haloperidol       2 mg   Intramu   q6h prn  Amy S Xue,
  lactate (HALDOL)         scular              Resident
  injection 2 mg
- diphenhydrAMINE   12.5   IV        q6h prn  Amy S Xue,
  (BENADRYL) 50      mg    Push               Resident
  mg/mL injection
  12.5 mg
- traMADol          100    Oral      4x daily Amy S Xue,
  (ULTRAM) tablet    mg               prn     Resident
  100 mg
- hydrochlorothiazid 25 mg Oral      daily    Amy S Xue,
  e                                           Resident
  (HYDRODIURIL)
  tablet 25 mg
- saline flush 10    10 mL Intraven  as       Theresa R
  mL                       ous       needed   Harring, MD
- IOHEXOL 300
  MG IODINE/ML
  IV Pyxis Override
- IOHEXOL 350
  MG IODINE/ML
  IV Pyxis Override

*(handwritten margin notes:)* Mind Altering Drug No Allergies Reported (Sedative Medication); Mind Altering Medication; Medication Is Sedative

Amy S. Xue, MD 41797
PGY-1 Surgery
713-404-1767 (pager)

Electronically signed by Xue, Amy S, Resident on 6/29/2013 4:20 PM

**Progress Notes by Shaji, Shani, RN at 6/29/2013 7:45 AM**                    Version 1 of 1

Author: Shaji, Shani, RN        Service: (none)                 Author Type: Registered Nurse
Filed: 6/29/2013 10:38 AM       Note Time: 6/29/2013 7:45 AM     Status: Signed
Editor: Shaji, Shani, RN (Registered Nurse)

Patient got really agitated during the assessment, stated that people are trying to kill him and that there are cameras watching him. Patient is alert and oriented X3 . Tried explaining to the patient that I am his nurse and that we are helping him here, patient refused the assessment and repeatedly banging on the rails asking for attorney. MD Xue notified, came and assessed the patient, and ordered for Ativan 1mg. Officer also at the bedside and explained the situation to the patient.

*(handwritten margin note:)* Asked for Attorney

Electronically signed by Shaji, Shani, RN on 6/29/2013 10:38 AM

**Progress Notes by Shaji, Shani, RN at 6/29/2013 7:10 AM**                    Version 1 of 1

Author: Shaji, Shani, RN        Service: (none)                 Author Type: Registered Nurse
Filed: 6/29/2013 7:28 AM        Note Time: 6/29/2013 7:10 AM     Status: Signed
Editor: Shaji, Shani, RN (Registered Nurse)

On morning assessment patient did not have C-collar on. Per night RN, patient removed the C-collar, MD paged.

Exhibit Nine

## CONSENTS, AGREEMENTS, AUTHORIZATIONS, ACKNOWLEDGEMENTS AND IRREVOCABLE ASSIGNMENTS

**I. GENERAL CONSENT FOR MEDICAL TREATMENT** ☑

Knowing that (Name of Person or I ) Stone, Renzy_____am (is) suffering from a condition requiring diagnosis and medical treatment, I hereby voluntarily consent to such diagnostic procedures and hospital care and to such medical treatment as is necessary in the judgment of members of the medical staff of the Harris County Hospital District of Harris County, Texas or medical staff contracted with the Harris County Hospital District. I understand that if a healthcare worker is accidentally exposed to my blood or body fluids in such a fashion that the healthcare worker may be at risk for contracting AIDS, I will be required to have my blood tested pursuant to Texas Law and hospital protocol to determine if I have Human Immunodeficiency Virus (HIV) or other blood borne infections. Test results will be kept confidential to the extent allowed by law and any information concerning my identity in connection with such testing will be destroyed after notification to the healthcare worker who was exposed.

**II. PROFESSIONAL SERVICES** ☑

I understand that the Harris County Hospital District (HCHD) partners and/or contracts with other providers to provide my medical care when I am seen at a HCHD facility. I understand that the information provided in this document pertains to HCHD as well as associated providers.

**III. AUTHORIZATION FOR RELEASE OF INFORMATION** ☑

I hereby authorize my employer or agent, the Harris County Hospital District (HCHD), any physician/doctor practicing within the HCHD, to use or disclose, to any potential or identified payer, my protected health information (medical information and billing records). I acknowledge that my protected health information may contain information about services rendered or products administered to me (or the patient) including references to drug and/or alcohol abuse, psychiatric care, sexually transmitted disease, HIV/AIDS, Hepatitis B or C testing, and other sensitive information. I understand that the purpose of the use or disclosure of the personal health information described above is to determine eligibility, process claims, and collect payment from any source of payment for care provided to me, including, but not limited to, insurance policies, grants, pharmaceutical patient assistance programs, and drug reimbursement programs.

**IV. AUTHORIZATION FOR TEXAS DEPARTMENT OF STATE HEALTH SERVICES** ☑

I give permission for authorized employees of Harris County Hospital District to enter or view patient/client data in the Texas Department of State Health Services statewide database.

**V. ACKNOWLEDGEMENT OF RECEIPT OF NOTICE OF PRIVACY PRACTICES** ☑

I have received a copy of the Harris County Hospital District's Notice of Privacy Practices.

**VI. A FINANCIAL RESPONSIBILITY** ☑

I assume full financial responsibility for payment of all charges for service rendered to the above patient. I understand that responsibility is based on the percentage of the balance left after insurance or third party programs and that this balance may be discounted according to the eligibility classification as determined by HCHD and associated providers. I understand that I may be responsible for two co-insurance amounts: A coinsurance liability for the hospital and a coinsurance liability for the physician/professional services.

**VII. WAIVER FOR PERSONAL BELONGINGS** ☑

Patients and Visitors are responsible for all personal belongings. HCHD is not responsible for lost, misplaced, stolen, or damaged personal belongings. I have been advised to leave all my personal belongings with friends or relatives and not to bring them to a HCHD facility. Personal belongings include money, jewelry, medications, documents, items of monetary or sentimental value, clothing, dentures, hearing aids, eyeglasses or contacts, watches, credit cards, wallets or purses, cameras, cell phones, laptops or computers, and medical equipment.

**VIII. ASSIGNMENT OF INSURANCE BENEFITS)** ☑

In consideration of services rendered, I hereby irrevocably assign and transfer to the HCHD and associated providers for myself and my dependents, all right, title, and interest in the benefits payable for services rendered, provided in any insurance policy(ies) under which I or any of my dependents are insured. Said irrevocable assignment and transfer shall be for granting the HCHD and associated providers an independent right of recovery including but not limited to recovery rights as a third party beneficiary on said policy (ies) of insurance, but shall not be construed to be an obligation of the HCHD or associated providers to pursue any such right of recovery. I also assign to the HCHD any and all benefits due and/or received on my behalf by the HCHD, under any pharmaceutical assistance or drug reimbursement program.

**IX. ASSIGNMENT OF THIRD PARTY CLAIMS, CRIME VICTIMS COMPENSATION** ☑

I hereby irrevocably assign to the HCHD and associated providers all right, title, and interest in benefits payable out of any third party action against any other person, entity, insurance company, or out of recovery under the Uninsured Motorist or Medical payment provisions of any automobile insurance policy (ies) or any other insurance policy (ies) under which I may be entitled to recover.

I further authorize the HCHD and associated providers to pursue on my behalf, any claim I may be entitled to pursue before the Crime Victims Compensation Division Of The Texas Industrial Accident Board in the event my hospitalization is necessitated by injuries received as the result of a violent crime, but in no event shall this be construed to be an obligation of the HCHD or associated providers. I understand that this agreement in no way restricts my or my dependents' independent right to pursue any such claim before the Crime Victims Compensation Division of the Texas Industrial Accident Board on my behalf. I understand that if the HCHD or associated providers are not paid in full by proceeds of any insurance policies then this assignment does not release my obligation and liability to the HCHD and associated providers for payment of the services and items provided. I agree to pay the HCHD and associated providers for all charges incurred or alternatively, for all charges in excess of the sums actually paid pursuant to said policies based on my eligibility classification.

**X. MEDICARE PATIENTS** ☑

I certify that the information given to me in applying for payment under Title XVIII of the Social Security Act is correct. I request that payment of authorized benefits be made on my behalf. I have been advised however, that Medicare may not cover the HCHD or physician charges related to this admission. I understand that I will be responsible for all charges should Medicare not pay based on my eligibility classification.

**XI. A DECLARATION**

I have read and understand the above initialed consents, agreements, authorizations, acknowledgements and irrevocable assignments. All questions have been fully answered. A photocopy of this document shall be considered as effective and valid as the original.

| | |
|---|---|
| Signature: _[signature]_ | Date: 6/30/2013 |

Printed Name: _____
(If not signed by the patient indicate the relationship to patient that allows for the signature authority i.e., parent, guardian, etc.)

| | |
|---|---|
| Witness: Deyanira Zepeda | Date: 6/30/2013 |

Patient ID

045058727
Stone, Renzy
M B 8/14/1981

**HARRISHEALTH SYSTEM**
CONSENTS, AGREEMENTS, AUTHORIZATIONS, ACKNOWLEDGEMENTS & IRREVOCABLE ASSIGNMENTS

Retention: HR-4800-04  280061(04/12)

Brady Motion
Case No. 1397660

State of Texas

V.

Renzy Stone.

In The 179th District Court
For The Harris County, Texas
Honorable Judge of the
179th District Court
Presiding.

Discovery Motion - "Brady" Inconsistent Evidence

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes the DEFENDANT, Renzy Stone, pro-se and in his proper person, under Authority of Article 39.14 of the Texas Code of Criminal Procedure, Article 1, Sections 10, 19 And 29 of the Constitution of the State of Texas, And the Fourth, Fifth, Sixth, And Fourteenth Amendments to the United States Constitution, and the doctrine of Brady V. Maryland, 429 S.W. 2d 490, And makes this motion for discovery and moves the Court to order the State of Texas, by and through HER prosecuting Attorney, to produce the material And information designated below, And to permit the Defendant to inspect, copy, or photograph Such items.

(1)

# PART A
## The Standards With Illustrations

I). The suppression by the prosecution of evidence favorable to AN ACCUSED upon Request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor. Brady v. Maryland, 373 U.S. 83, 87 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d. 215 (1963); Means v. State, 429 S.W. 2d. 490, 495 (Tex. Crim. App. 1968).

The duty to disclose exculpatory evidence includes information that would tend to impeach prosecution witness. Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d. 104 (1972).

II). "It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not supress facts or secrete witnesses capable of establishing the innocence of the accused." Article 2.01, Texas Code of Criminal Procedure. This Requirement is underscored by the American Bar Association Standards for the Prosecutorial Function under proposed standard 3-3.11

III). "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment." <u>Supreme Court of Texas, Rules Governing the State Bar of Texas</u> Art. X, §9 (Code of Professional Responsibility) DR 7-103(b) (1984).

IV). EC 7-13 provides that "with respect to evidence and witnesses, the prosecutor has responsibilities different from those of the lawyer in private practice: the prosecutor should make timely disclosure to the defense of available evidence, known to him that tends to negate the guilt of the accused, mitigate the degree of offense, or reduce the punishment. Further, A prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecutor's case or aid the accused." Section 3.11 of the <u>American Bar Association Standards Relating to the Prosecuting Function</u> provides:

"(a) It is unprofessional conduct for a prosecutor to fail to make timely disclosure to the defense of the existence of evidence, known to him, supporting the innocence of the defendant. He should disclose evidence that would tend to negate the guilt of the accused or mitigate the degree of the offense or reduce the punishment at the earliest feasible opportunity...

(3)

"(c) It is the unprofessional conduct for a prosecutor intentionally to avoid pursuit of evidence because he believes it will damage the prosecution's case or aid the defense."

## V.

### Uncovering Leads Or Discrediting Investigation

If the evidence could be used to cast doubt upon the defendant's guilt, to uncover other leads or defense theories, or to discredit the police investigation, it is exculpatory and should be disclosed. Bowen v. Maynard, 779 F.3d. 593, 612 (10 Cir.), cert. denied, 107 S.Ct. 458 (1986); Lindsey v. King, 769 F.2d. 1034, 1042-1043 (5th Cir. 198

## VI.

### Inconsistent Statements

Prior inconsistent statements constitute impeachment material. Tex. R. Crim. Evid. 612(a); Fed. R. Evid. 613.

## VII.

### Imputed Knowledge

"The prosecuting attorney's obligations under this standard extend to material and information in the possession or control of members of the prosecutor's staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or, with reference to the particular case, have reported to the prosecutor's office." American Bar Association, Standards for Criminal Justice Standard 11-2.1(d)(2d.Ed. 1980).

(4)

When an investigating police officer willfully and intentionally conceals material information, regardless of his motivation and otherwise proper conduct of the state Attorney, the policeman's conduct must be imputed to the State as a part of the prosecution team. Freeman v. State of Georgia, 599 F 2d. 65, 69 (1979).

Knowledge of the police should be imputed to the prosecution. Cramer v. Fabner, 683 F. 2d. 1376, 1382 (7th Cir.), cert. denied, 459 U.S. 1016, 103 S. Ct. 376, 74 L. Ed. 2d. 509 (1982).

# VIII.

## "Good Faith" Is Completely Irrelevant

Prosecutor's "good or bad faith" is irrelevant when determining whether a constitutional violation occurred. Brady v. Maryland, supra, 429 S. W. 2d. at 495.

The constitutional obligation to disclose material information is not "measured by the moral culpability, or the willfulness, of the prosecutor," but rather is measured by the character of evidence suppressed. United States v. Agurs, supra. 427 U.S. At 110, 96 S. Ct. at 2400. "If evidence probative of innocence is in the Prosecutor's file, he should be presumed to recognize its significance even if he has actually overlooked it." Id.

# IX.

Even if there is no defense request, or a general request, the prosecutor still has a duty to disclose if the evidence is clearly supportive of a claim of innocence. 427 U.S. at 107, 96 S. Ct. At 2399.

## X.

### Even Guilty Plea Is Invalidated

Ex parte Lewis, 587 S.W. 2d. 647 (Tex. Crim. App. (1979)), holds that prosecutor's failure to disclose favorable evidence before entry to plea negated knowing and intelligent plea.

## XI.

### Requirement To Run Record Checks

The prosecutor's failure, due to time constraints, to run a routine FBI or NCIC check on his witness does not excuse him of his constitutional duty to disclose favorable evidence. United States v. Auten, 632 F. 2d. 478, 481 (5th Cir. 1980).

## XII.

### Failure To Identify Or Mention Defendant

Witness' failure to give positive identification of defendant. Lindsey v. King, supra, 769 F. 2d. at 1042. Witness' failure to mention the defendant. Jones v. Jago, 575 F. 2d. 1164, (1978).

## XIII.

### Inspections Required -- Not On Benevolence Of Prosecutor

In camera inspections may be deemed necessary since "alternative procedures for safeguarding the rights of criminal defendants are desirable. The right of the accused to have evidence material to his defense cannot depend on the benevolence of the prosecutor." United States ex rel. Williams v. Dutton, 431 F. 2d. 70, 72 (5th Cir. 1970), vacated on other grounds, 408 U.S. 938, 92 S.Ct. 2867, 33 L.Ed. 2d. 758 (1972) (adopting in camera procedure in Fifth Circuit Brady cases).

# XIV.

## Duty Continues Through Trial

The prosecutor has a continuing duty throughout the trial to produce exculpatory evidence. United States V. Agurs, supra, 427 U.S. at 110, 96 S. Ct. at 2399. Suarez V. State, 439 S.W. 2d. 346, 348 (Tex. Crim. App. 1969). The prosecutor has a duty to correct testimony when it becomes apparent that the testimony is false. Losada V. State, supra, 721 S.W. 2d. at 311; Luck V. State, supra, 588 S.W. 2d. at 323.

# XV.

## Good Cause

In order to show good cause, the Defendant maintains that the information hereinafter sought is either in the possession of the Prosecutor's office, its agents, or law enforcement officers, or ready accessible to the department and none of the information is available to the Defendant prior to trial except by order of this Court, and that the information requested is not privileged and is within the proper scope of Article 39.14, Texas Code of Criminal Procedure and further, Defendant needs to inspect such material prior to trial so that proper objections can be prepared thereto and proper defenses can be prepared for trial on the merits; and that 1). The Defendant cannot safely go to trial without such information and inspection nor can the Defendant adequately prepare the defense to the charges against him; and that 2). Absent of such discovery, Defendant's rights under the above stated laws, provisions and doctrines and the Constitutions of the United States and of the State of Texas and the laws thereof will be violated to his irreparable injury and thus will deprive the Defendant of a fair trial herein.

# XVI.

## Materiality

Good cause exists for these Requests In that such witness Information should be provided under the decision in _Brady v. Maryland, 370 U.S. 883,_ and is material in that withholding such Information by the prosecution would be unfair and in violation of Defendant's Rights under the United States and Texas Constitutions and each of the previously Referenced Authorities.

## Part B
## Specific Requests With

1. All evidence of policy and practice which could effect the due course of law relating to the Rights of Defendant to include but not limited to:

(a). policies of the arresting agency concerning:

(1) nature and sufficiency of probable cause prior to any stop to include _Terry_ stops;

Granted _____ Denied _____ to which the defendant accepts.

(2) Policy concerning cause sufficient to warrant arrest of accused;

Granted _____ Denied _____ to which the defendant Accepts.

(3) Policy directing actions after Arrest to include but not limited to:

(a) securing accused to protect safety of officer and prevent escape.

Granted _____ Denied _____ to which the defendant accepts.

(b) due diligence toward locating magistrate

Granted _____ Denied _____ to which the defendant accepts.

(4) scope And substantive content of All documentation prepared by arresting officer And the disposition of said reports;

Granted _____ Denied _____ to which defendant accepts.

(5) procedures for securing and maintaining video Recordings made

(a) at the scene of arrest, and/or

Granted _____ Denied _____ to which defendant accepts.

(b) in the jail

Granted _____ Denied _____ to which defendant accepts.

(6) procedures for assisting magistrate when bringing arrested Persons before magistrate while in custody

Granted _____ Denied _____ to which defendant accepts.

(7) the disposition And current location of all records Referenced by Article 17.30 Texas Code of Criminal Procedure to include those records specifically referenced by name, the criminal complaint which must be the first document presented to the magistrate, and all other documents had in the hearing;

Granted _____ Denied _____ to which defendant accepts.

(a) specific procedure whereby prosecutors office is notified of a charge being filed Against a person Arrest by the Agency;

Granted _____ Denied _____ to which defendant accepts

(b) what specifically is the practice concerning disposition of Records used by magistrate when persons arrested by the Agency are brought before same;

(1) to specifically include the disposition of the criminal complaint presented to the magistrate. whereby magistrate is vested with jurisdiction to hold AN examination into the sufficiency of same;

Granted _____ Denied _____ to which defendant accepts.

(2) the recording of the proceedings had in the hearing held as Required by Article 15.17 Tex. Code. Crim. Pro.;

Granted _____ Denied _____ to which defendant accepts.

(c) specific practice and policy whereby records concerning the cause against a person arrested by the agency is made known to the clerk of the proper court;

Granted _____ Denied _____ to which defendant accepts.

(d) scope and substantive content of all records collected, Assembled, or maintained by the prosecutors office concerning persons arrested by the agency.

Granted _____ Denied _____ to which defendant accepts.

2. All confessions, Admissions and statements:

(a) Signed by the defendant,

Granted _____ Denied _____ to which defendant accepts.

(b) of or Attributed to defendant, oral in nature and set down and preserved under Article 38.22 of the Texas Code of Criminal Procedure, in writing or otherwise.

Granted _____ Denied _____ to which defendant accepts.

(10)

3. In the event that an oral statement by the defendant to the State, any of its agents or their parties is being relied upon by the State in the prosecution of this case, the defendant requests the Court to instruct the State to provide the Defendant the summary or text in writing of such statement and any audio, video, or both audio-video tape of such statement(s), confession(s) were made.

Granted _____ Denied _____ to which defendant accepts.

4. Any res gestae statements purportedly made by the Defendant to the State, any of its agents or third parties.

Granted _____ Denied _____ to which defendant accepts.

5. All oral, written and/or recorded statements of the defendant, and memoranda of said Statements made to any investigating officer or any member of any law enforcement agency, or to any third party, which is in the possession of or within the knowledge of the Prosecutor's office or any agent thereof, including any law enforcement agency or contract agency.

Granted _____ Denied _____ to which defendant accepts.

6. All hand written and typed Notes made by all law enforcement officials or agents thereof, prior to, during and after the defendant was interrogated; or in the alternative, that all said handwritten and typed notes be accurately preserved and maintained by said law enforcement officers until the trial of this cause in order that same may be available to the court and the jury on the issue of the voluntariness of the defendant's statements.

Granted _____ Denied _____ to which defendant accepts.

(11)

7. Any statements, whether written or oral, by the defendant or any co-defendant or co-conspirator, either indicted or unindicted, which the State of Texas intends to introduce to show the existence of a conspiracy or evidence of acting in concert, the date of such statements or evidence, the time such statements or evidence, and the place where such statements or evidence took place.

Granted _____ Denied _____ to which defendant accepts.

8. All statements made by any party or witness to this alleged offense, in the possession of or within the knowledge of the prosecuting attorney or any of his agents, including any law enforcement agency, whether such statements whether written or oral, which might, in any manner, be material to either the guilt or innocence of the Defendant or the punishment, if any, to be set in this case.

Granted _____ Denied _____ to which defendant accepts.

9. A written transcription of the testimony of all of the witnesses who appeared and testified before the Grand Jury, any magistrate or other officer of the court, regarding the facts of this case; or, in the alternative, that the Court order the Prosecutor to immediately order said transcription of all said testimony in order that it will be available and in the possession of the prosecutor at the time of trial. In further support of this request, the defendant submits the following particular needs

    a. to cross examine and impeach said witnesses;
    b. to discover prior inconsistent statements;
    c. to test the credibility of said witnesses;
    d. to test recollection of said witness;
    e. to get the names and occupations of Grand Jury members said if Retired, to state their prior job title and description.

Granted _____ Denied _____ to which defendant accepts.

(12)

10. Defendant further requests the Court to order the attorneys for the State to provide the Defendant with any material differences in the testimony of any witness who appeared before the Grand Jury, Magistrate, or any official for the purpose of giving a statement concerning this cause, and subsequently will testify in this cause or may testify in this cause for the reason that the attorneys for the State can be present during the testimony when it is received and the accused is not normally afforded that privilege and if there is a material difference in the witnesses testimony the accused has the right to said testimony for impeachment purposes of the State's witnesses so as to effectively confront and cross examine the witness.

Granted _____ Denied _____ to which defendant accepts.

11. Defendant requests the Court to order the State to provide the defense in this cause with said transcript, summary, recording, or other reproduction of all the testimony of any witnesses in connection with this cause who have appeared before the Grand Jury, any Magistrate, or other official for the purpose of making statements concerning the present cause.

Granted _____ Denied _____ to which defendant accepts.

12. The defendant further requests that the State be ordered to permit the viewing and copying of any statement or statements made by any and all actual or potential witnesses for the prosecuting in this cause so as to effectuate the effective cross - examination and confrontation of the witnesses against the accused at trial of this matter.

Granted _____ Denied _____ to which defendant accepts.

(13)

13. The defendant requests the Court to order the State to provide the defendant with the name, address, occupation and telephone number of each and every witness known to the State who may know any fact material to the prosecution of this case or the defense thereof along with the same to all Grand Jury members in the case at bar.

Granted _____ Denied _____ to which defendant accepts.

14. The defendant request the State to provide the defendant with the name, address, occupation and telephone number of any witnesses which it does not anticipate calling to testify at the time of trial, but which it believes, or has reason to believe, may have material information relation to the innocence of the defendant.

Granted _____ Denied _____ to which defendant accepts.

15. Defendant requests that defendant be furnished with a list of the prospective jurors and panel from which the Jury may be selected, as soon as such list is known.

16. The Defendant further requests the Court to order the State's Attorney to reveal whether any witness in this matter has been the subject of any hypnotic interviews or interrogations, if any. In the event that such hypnotic interviews have been conducted Defendant requests the State to provide defense counsel with the name and address of such interviewee and interviewer, and any other parties present, the conditions under which the interview together with the transcription, video tape and audio recording of such interviewing session for inspection, viewing and copying and the results of such interviews if any.

Granted _____ Denied _____ to which defendant accepts.

(44)

17. The accused requests the Court to order the State herein to Reveal any agreements it has made with any actual or potential witnesses in this case that could conceivably influence said witnesses' testimony. The Accused Further Requests that the full terms and conditions of said agreement be given to defense counsel in advance of the trial of this cause in writing.

Granted _____ Denied _____ to which defendant accepts.

18. If any witness or witnesses have used a writing to refresh his or her memory, either while or prior to giving testimony Relevant to this cause, Defendant Requests the Court to order the State to designate which witness or witnesses have Refreshed their memories and with what materials they have Refreshed their memory in writing in advance of this trial under such reasonable terms of notice as the Court may order.

Granted _____ Denied _____ to which defendant accepts.

19. In the event that the State has or may produce or otherwise introduce evidence of an expert witness in the trial of this cause the Defendant Requests that may Report, whether written (or if oral be reduced to writing) and the underlying data, summaries, compilations, Records, materials, texts, books, documents or other tangible items be disclosed to Defendant herein so as to effectively confront, cross-examine or impeach such expert and to acquaint any Defense expert therewith so as to place defensive evidence upon such evidence before the trier of fact in this cause.

Granted _____ Denied _____ to which defendant accepts.

(15)

20. Defendant Requests that if the State has or claims to have evidence of any convictions of the accused or any other person who it has knowledge is or may be a witness in this cause that it give written Notice of such intent in writing specifying the nature, date and location of such records, and the witness or witnesses against whom such Records will be introduced at least fourteen (14) days in advance of the trial of this cause (or such other reasonable time in advance of the trial that the Court may specify) so as to provide defendant herein with sufficient notice so as to have a fair opportunity to contest the use of such evidence in the trial of this cause.

Granted ___ Denied ___ to which defendant accepts.

21. All objects and tangible property alleged by the State to have been taken from or used by the defendant, a party to this alleged crime or any co-conspirator during the course of the commission of the offense with which the defendant is herein indicated.

Granted ___ Denied ___ to which defendant accepts.

22. All documents, papers, book, accounts, letters, objects and tangible things which are the property of the defendant and which are in the possession, custody and control of the prosecutor.

Granted ___ Denied ___ to which defendant accepts.

23. All documents, papers, book, accounts, letters, objects and tangible things which are the property of the defendant and which are in the possession, custody and control of the prosecutor or any agent of the government as a result of the investigation in this case and which are material evidence in this case as to the defendant's guilt or innocence, or as to the punishment, if any

Granted _____ Denied _____ to which defendant accepts.

24. All stenographic and telephone recordings and transcriptions thereof of all information and evidence obtained by means of electronic eavesdropping, surveillance, recording, monitoring or wiretapping by law enforcement officers, and all test results run on said recordings, in order to permit the defendant to adequately and properly test the validity and authenticity of each of said recordings prior to trial by an expert of the defendant's choosing.

25. The prosecutor should be required to identify the location of recovery of the items provided to the defendant pursuant to this motion for discovery, such information is necessary to determine whether or not such evidence is objectionable at the time of trial on grounds that the evidence has not been properly proved or that the evidence was taken in violation of the defendant's rights under the laws and Constitution of the State of Texas and the Constitution of the United States.

Granted _____ Denied _____ to which defendant accepts.

(17)

26. The defendant further requests the Court to order the State's Attorney to permit the viewing, transcription and copying of any audio, video-tape (or both) interviews of the accused, complaining witness, or other witness/party herein by defense counsel if any such interviews were conducted.

Granted ____ Denied ____ to which defendant accepts.

27. Defendant requests the State to provide defendant with copies of the arrest records, the offense reports, and any and all other records and photographs, maps, diagrams and drawings prepared by the Police Department in their investigation in this cause.

Granted ____ Denied ____ to which defendant accepts.

28. Any written waiver alleged by the State to have been signed by the defendant concerning the defendant's right to counsel prior to the making of any written or oral statements by the defendant.

29. Any written consent to search defendant's office, residence, automobile, or his person alleged by the State to have been signed by defendant prior to, during or after any search and seizure herein.

30. Granted ____ Denied ____ to which defendant accepts.

30. The search warrant and arrest warrant and affidavits in support thereof, used by law enforcement authorities to enter and search defendant's office, residence, automobile, or his person.

Granted ____ Denied ____ to which defendant accepts.

(18)

31. The name of each and every person who, at any time, helped seize, confiscate, take control of or possession of, count, stack, handle, examine, study or analyze any record and/or other evidence that the government intends to offer into evidence in the trial of this case so that defendant will have ample opportunity prior to trial to determine the present integrity of such record and/or evidence.

Granted ——— Denied ——— to which defendant accepts.

32. The officer's return on any warrant, capias or commitment relating to this accused or any party to the offense alleged against the accused herein. In this connection, defendant requests to see any purported court order or authority pursuant to which evidence against this defendant was received, obtained, or seized.

Granted ——— Denied ——— to which defendant accepts.

33. Any written warnings of rights or waiver of the same by the Defendant including but not limited to:

a. Consent to submitting specimens of breath, blood, urine, hair or other materials:

Granted ——— Denied ——— to which defendant accepts.

b. Refusal to submit specimens of breath, blood, urine, hair or other materials:

Granted ——— Denied ——— to which defendant accepts.

c. Voice and/or handwriting exemplars.

Granted ——— Denied ——— to which defendant accepts.

34. All reports and results of any forensic or scientific tests, experiments and comparisons, or examinations and compilations of whatever nature made by any state or county agency or contract agency at the request of the Prosecutor's office or a law enforcement officer or any state or county employee, and all other reports of experts and the name and address of each such person who made such report or performed such test, experiment, comparison, examinations, or compilations.

Granted _____ Denied _____ to which defendant accepts.

35. The accused requests that the State's attorney request the Court to make an in camera inspection of all evidence sought to be discovered but withheld by the prosecution herein.

36. The accused requests that the State answer this motion in writing and under oath.

Granted _____ Denied _____ to which defendant accepts.

Respectfully Submitted,

/s/ _____

Renzy Stone

(20)